HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JACOB HOWARD NICOLAAS,

              Plaintiff,

       v.

ALEXANDER PACE, et al.,

              Defendants.

CASE NO. C12-1357RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for summary judgment from a group of Defendants along with two peripheral motions Plaintiff filed.  No party requested oral argument.  The court finds oral argument unnecessary.  For the reasons stated below, the court GRANTS Defendants' motion for summary judgment (Dkt. # 17), GRANTS Plaintiff's motion to consider several of his untimely submissions (Dkt. # 34), and DENIES Plaintiff's motion (Dkt. # 36) invoking Federal Rule of Civil Procedure 56(d) to delay consideration of the summary judgment motion.

## II.  BACKGROUND

At about 4:00 a.m. on June 11, 2010, Bellingham police officers responded to a call from the victim of a robbery in a store parking lot.  When they arrived, the victim, Alexander Pace, reported that he had returned to his car to discover someone inside it.

ORDER – 1

When confronted, the suspect sprayed mace at Mr. Pace and fled with a backpack. Mr. Pace discovered signs of forced entry to his car and several missing items.

Police fanned out around the store to search for the suspect. They found an abandoned backpack nearby containing the property stolen from Mr. Pace's car. They also found a man, Plaintiff Jacob Nicolaas, biking away from the vicinity of the parking lot. Mr. Nicolaas's explanation of his presence near the scene did not convince the officers. They held him briefly while other officers brought Mr. Pace to Mr. Nicolaas to identify him.

When Mr. Pace first approached, Mr. Nicolaas was facing away from him. Mr. Pace was initially uncertain if Mr. Nicolaas was the man who robbed him. He stated that Mr. Nicolaas's hair and clothing generally matched the person who robbed him. But he admitted that Mr. Nicolaas was wearing shin guards, which Mr. Pace did not remember. Mr. Pace also admitted that he did not get a good look at the suspect's face during the robbery.

Officers then turned Mr. Nicolaas around. For the first time, Mr. Pace saw the front of Mr. Nicolaas's clothing. He told officers that he remembered the design on Mr. Nicolaas's sweatshirt, and thus positively identified him as the robber.

The officers arrested Mr. Nicolaas (if they had not already) and took him to the Bellingham jail. They obtained warrants to seize Mr. Nicolaas's clothes and to take buccal swabs (*i.e.*, swabs of cells from the inside of Mr. Nicolaas's cheek). Mr. Nicolaas was charged with second degree robbery and less serious offenses.

Mr. Nicolaas apparently did not post bail; he remained in jail until his trial on August 10, 2010, a period of about 60 days. The first trial resulted in a hung jury.

Prior to the first trial, no one had tested the cells obtained from the buccal swabs. Except for much more serious crimes, Bellingham police did not automatically test buccal swabs. Prosecutors had the option to request testing, but did not do so in every

ORDER – 2

case, and did not do so in this case.  There is no evidence that Mr. Nicolaas or his counsel requested testing of the swabs.

Seven days after the first trial began, the prosecutor requested testing on the buccal swabs.  On September 27, the Washington State Crime Laboratory issued a report comparing the DNA from the swabs to DNA on property stolen from Mr. Pace's car.  The tests exonerated Mr. Nicolaas.  On September 30, prosecutors dismissed all charges against him and released him from custody.

This suit followed.  Mr. Nicolaas sued the City of Bellingham, its Chief of Police, and thirteen officers who had an alleged role in Mr. Nicolaas's arrest and detention.  He also named Mr. Pace as a Defendant.  He also named the Washington State Crime Laboratory and one of its technicians, but he has since dropped those claims.

The City, its Chief of Police, and the thirteen police officers (collectively the "Bellingham Defendants") joined in a motion for summary judgment.  Mr. Nicolaas did not timely respond to the summary judgment motion.  His opposition was due February 11 of this year.  He submitted nothing.  Ten days later, he submitted a lone declaration, unaccompanied by a brief.  The Bellingham Defendants asked the court to strike the untimely declaration.  Three days later, Mr. Nicolaas submitted a series of motions, including two that are still pending.  One asks the court to continue the summary judgment motion.  The other asks the court to accept his late opposition to the summary judgment motion.

The court accepts the untimely filings at least in part because they make matters much simpler.  The summary judgment motion attempted to target every claim Mr. Nicolaas raised in his complaint, including claims of false arrest, false imprisonment, wrongful detention, infliction of emotional distress, negligence, slander, and more.  He also attempted to invoke a host of federal civil rights statutes, including 42 U.S.C. § 1983.  In his opposition to the summary judgment motion, Mr. Nicolaas expressly or

ORDER – 3

implicitly abandoned all but one of them.  Pltf.'s Opp'n (Dkt. # 29) at 8 (abandoning state law negligence claims, libel and slander claims, standalone punitive damage claims, and libel and slander claims, as well as all federal claims not arising under § 1983).

What remains is Mr. Nicolaas's § 1983 claim.  It is apparent, moreover, that Mr. Nicolaas is pursuing only one species of § 1983 claim.  He contends that the Bellingham Defendants violated his constitutional rights by not sooner obtaining the DNA tests that exonerated him.[1]  The court now considers whether it may resolve that claim on summary judgment.

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

Mr. Nicolaas's claim ultimately raises only a legal question.  There is no dispute that had someone obtained DNA tests more quickly, Mr. Nicolaas would have been exonerated more quickly, and would have spent fewer days in jail.

---

[1] To the extent that Mr. Nicolaas's complaint states any other species of § 1983 claim (*e.g.*, a claim for unlawful arrest in violation of the Fourth Amendment) he made no argument in his opposition to the summary judgment motion to preserve that claim.  Mr. Nicolaas thus abandoned any § 1983 claim other than one based on a right to DNA testing.

ORDER – 4

1    What is very much in dispute, however, is whether there is any constitutional

2  requirement for police officers to conduct or commission tests on DNA they extract from

3  suspects.  That question is narrow.  Mr. Nicolaas has not sued any Whatcom County

4  prosecutor, so the court need not inquire into a prosecutor's obligations with respect to

5  DNA testing.  There is no evidence, moreover, that Mr. Nicolaas (or his counsel) ever

6  requested DNA tests on the swabs or the stolen property.  This is not, in other words, a

7  case in which any state actor denied Mr. Nicolaas access to potentially exculpatory

8  evidence.  There is likely a limited right, grounded in the Fourteenth Amendment's Due

9  Process Clause, to obtain newly-developed DNA tests in postconviction proceedings.

10  *See District Attorney's Office v. Osborne*, 557 U.S. 52, 71-72 (2009) (acknowledging

11  possibility of procedural due process claim if state procedures were inadequate to

12  vindicate state-created liberty interest in postconviction relief).  The court is aware of no

13  authority establishing a constitutional right to access to DNA evidence *before* trial, but

14  Mr. Nicolaas does not invoke that right in any event.

15    What Mr. Nicolaas invokes is the constitutional obligation of the police to

16  commission DNA tests in advance of trial.  Mr. Nicolaas cites no authority establishing

17  this obligation.  So far as the court is aware, no court has entertained the notion that

18  police *must* test DNA evidence.  Police *may* conduct DNA tests, of course.  If the test

19  results are exculpatory, a prosecutor has a constitutional obligation (arising from *Brady v.*

20  *Maryland*, 373 U.S. 83 (1963)) to disclose the results.  Neither *Brady* nor any other

21  precedent of which the court is aware requires DNA tests.  At least one appellate court

22  has squarely rejected the notion that a defendant can require the government to

23  investigate a case as the defendant prefers.  *United States v. Tadros*, 310 F.3d 999, 1005

24  (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the

25  government to act as a private investigator and valet for the defendant, gathering

26  evidence and delivering it to opposing counsel.").  The Supreme Court has held that even

27

28  ORDER – 5

when police inadvertently destroy potentially exculpatory evidence before trial, there is no Due Process violation. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("We . . . hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."). If inadvertent destruction of potentially exculpatory evidence is not a constitutional violation, then preservation of such evidence without testing it is not a constitutional violation.

The court does not purport to decide that police *never* have the obligation to test DNA evidence; it decides only that they had no obligation in this case. In a different case, where there was evidence that police chose in bad faith not to perform DNA tests that they believed would be exculpatory, the court might inquire more deeply into what the Constitution requires. *See Youngblood*, 488 U.S. at 58 (finding no constitutional right, absent a showing of bad faith, to preservation of evidence). But there is no evidence of bad faith in this case. Mr. Nicolaas emphasizes that police had at least some indication that he might not be the person who robbed Mr. Pace. Mr. Pace was initially unable to positively identify Mr. Nicolaas and admitted that the mace in his eyes made it difficult to see his assailant clearly. Mr. Pace nonetheless made a positive identification after seeing the front of Mr. Nicolaas's clothing. It is regrettable that his identification was mistaken, but his identification was more than sufficient grounds to prosecute Mr. Nicolaas. Police did not act in bad faith by failing to obtain DNA tests to corroborate Mr. Pace's positive identification.

The absence of a constitutional violation is fatal to Mr. Nicolaas's § 1983 claim. Section 1983 provides a remedy for a plaintiff who proves that a defendant acting under color of state law violated her constitutional rights. Defendants sued in their personal

ORDER – 6

capacity[2] for violating § 1983 may also invoke qualified immunity, which protects some § 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant successfully invokes qualified immunity either by showing that a plaintiff has not alleged (or provided evidence for, depending on the stage of litigation) facts amounting to a violation of a constitutional right or that the right was not "clearly established" at the time of the defendant's violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court has discretion to consider either portion of the qualified immunity test first. *Id.* at 236 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001)). Municipalities (and other government units) along with individuals sued in their official capacity cannot invoke qualified immunity. *Eng v. Cooley*, 552 F.3d 1062, 1063 n.1 (9th Cir. 2009). They can be held liable, however, only if an official policy or custom was the cause of the plaintiff's constitutional violation. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("Under *Monell*, a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but-for and proximate causation.").

In this case, the Bellingham Defendants are entitled to summary judgment because no one violated Mr. Nicolaas's constitutional rights. Assuming that Mr. Nicolaas had sued one or more Defendants in his personal capacity, those Defendants would have an additional basis to invoke qualified immunity – even if Mr. Nicolaas had a constitutional right to pretrial DNA testing, that right was not clearly established.

---

[2] Mr. Nicolaas explicitly sued the 13 officers solely in their official capacities, although he appears to concede that this was an error. Today's ruling would be the same regardless of the capacity in which Mr. Nicolaas sued the individual officers.

ORDER – 7

1      Finally, the court considers Mr. Nicolaas's Rule 56(d) motion to delay

2  consideration of the summary judgment motion.  Rule 56(d) permits a party to resist a

3  summary judgment motion by "show[ing] by affidavit or declaration that, for specified

4  reasons, it cannot present facts essential to justify its opposition" to the motion.  Fed. R.

5  Civ. P. 56(d).  A party may invoke Rule 56(d) to ask the court to deny the summary

6  judgment motion outright, or delay consideration of it while the party completes

7  necessary discovery.  A party relying on Rule 56(d) must offer specific reasons that it

8  needs additional discovery to oppose a summary judgment motion.  The affidavit must

9  state "the specific facts it hopes to elicit from further discovery," and that "the sought-

10  after facts are essential to oppose summary judgment."  *Family Home & Fin. Ctr., Inc. v.*

11  *Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  A court has discretion

12  to deny a Rule 56(d) request that does not meet these requirements.  *Tatum v. City &*

13  *County of San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006) (discussing Rule 56(f),

14  the predecessor to Rule 56(d)).

15      Mr. Nicolaas's counsel asks the court to delay consideration of the summary

16  judgment motion until he can obtain evidence from his client.  Counsel filed that motion

17  on February 27, contending that his client was in jail in Oregon and expected to be

18  released on February 7.  The court has no idea why counsel did not update the

19  information in his Rule 56(d) motion, and in particular why counsel made no mention of

20  the fact that he obtained a declaration from Mr. Nicolaas dated February 21.  In any

21  event, there is no reason to believe that a delay in consideration of the summary judgment

22  motion would cure the fundamental defect in Mr. Nicolaas's § 1983 claim: he had no

23  constitutional right to have police conduct DNA tests before his trial.

### IV.   CONCLUSION

25      For the reasons stated below, the court GRANTS Defendants' motion for

26  summary judgment (Dkt. # 17), GRANTS Plaintiff's motion to consider several of his

ORDER – 8

untimely submissions (Dkt. # 34), and DENIES Plaintiff's motion (Dkt. # 36) invoking Federal Rule of Civil Procedure 56(d) to delay consideration of the summary judgment motion.  The court directs the clerk to TERMINATE all Defendants except Mr. Pace and Jane Doe Pace.

Dated this 26th day of August, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 9